## Plummer *against* Neile.

A tenant in common of a tract of land devised to his co-tenant his estate, upon condition that he would convey to his daughter a certain part of the land. After the death of the testator, the devisees took possession and enjoyed for a long time their respective portions; but no conveyance was ever executed. *Held* to be a substantial compliance with the requisitions of the will, and that the demise was not forfeited by the omission to convey.

ERROR to the District Court of *Allegheny* county.

This was an action of ejectment by the heirs of Nathaniel Plummer deceased, against Eli Neile and others, for a tract of 390 acres of land. The whole case is fully stated in the opinion of the court.

*M'Candless* and *Miller*, for plaintiff in error, cited 5 *Rawle* 375; 3 *Maule & Selw.* 300; 2 *Vern.* 366; 2 *Watts & Serg.* 65; 4 *Serg. & Rawle* 373; 3 *Cowen* 58; 2 *Meriv.* 24; 18 *Vez.* 368; *Pow. on Devi.* 522; 21 *Law Lib.* 305.

*Metcalf*, contra, whom the court declined to hear.

The opinion of the court was delivered by

KENNEDY, J.— The land in dispute was held by Nathaniel Plummer the elder, the ancestor of the plaintiffs, in common with his son Nathaniel Plummer junior; that is, the whole tract was held by them as tenants in common. On the 14th day of August 1814, Nathaniel Plummer the elder made his last will and testament, whereby, *inter alia*, he bequeathed and devised as follows: " I do also give and devise to my daughter Hannah Fetterman 30 acres of land, lying at the south-west corner of the land on which I live, bounded, &c., to have and to hold the same to her, for and during her natural life; and after her death to her three sons, Washington, Plummer and George, to them and their heirs and assigns for ever as tenants in common. I do give and bequeath to my said daughter Hannah Fetterman $500, to be paid to her by my son Nathaniel in one year after my death." And then, in a subsequent clause, the testator devises and directs as follows: " I do devise and direct my son Nathaniel Plummer jr, to convey to my said daughter Hannah Fetterman his undivided moiety of the 30 acres before mentioned for her life, and to her three children in fee after her decease. On the *condition of his compliance* with this request, I do devise to him, his heirs and assigns for ever, the remainder of the land whereon I now live, being the undivided

moiety, to be held and enjoyed by him in fee-simple after the death of my wife, subject to the privilege of fruit given to my daughter Hannah." On the 10th of April 1818, the testator, by a codicil to his will, after reciting that in his will he had given to his daughter Hannah 30 acres of land on the north-west of his land whereon he then lived, during her natural life, and after her decease to her three sons in fee for ever, and likewise, in the same will, that he had given unto his said daughter Hannah $500 to be paid to her in one year after his decease, by his son Nathaniel, proceeds as follows: "Now I do hereby declare, that in lieu of the said 30 acres of land, mentioned in said will, I give unto her and unto her said three sons after her decease, in like manner as therein mentioned, 10 acres of land lying in the south-east corner of my land, and joining lands with Andrew M'Farland, &c.; and likewise in lieu of the $500, mentioned in said will, I have executed a deed of conveyance to my said daughter, and to her heirs and assigns for ever, for 5 acres and 11 perches of my land, adjoining the aforesaid 10 acres, which is to be considered as a full consideration for said $500 as mentioned in said will." The residue of the land devised to Nathaniel the son, whereon the testator lived, is the same which is claimed to be recovered in this action by the plaintiffs as the heirs at law of the testator. They claim that the devise to the son has a condition precedent annexed to it, for which reason no estate under the devise did or could vest in him until he performed the condition; and it not appearing or having been shown that the condition ever was performed, the plaintiffs, consequently, are entitled to recover. The condition mentioned in the will is, that the son, who was tenant in common in fee with the testator in the 30 acres devised to Hannah, the daughter, should convey his undivided moiety in the 30 acres to Hannah, so that she should have and hold the entire 30 acres in severalty. And that notwithstanding the devise of the 30 acres to Hannah is revoked by the codicil in such a manner as to show clearly that the testator thereby intended that she should not take or have any interest in the same, yet the plaintiffs allege that by a fair construction of the codicil, the requisition on Nathaniel, her son, to convey his undivided moiety in the 30 acres to Hannah, must be considered as transferred and applied, by necessary implication, to the 10 acres thereby devised to Hannah in lieu of the 30 acres; and that Nathaniel, the son, having failed to convey his undivided moiety in the 10 acres to Hannah, the undivided moiety of the testator in the residue of the land on which he lived, never passed by the will to the son, but descended to and became the estate of the plaintiffs, as the heirs at law of the testator.

Now, whether the testator intended that Nathaniel, the son, should convey the 10 acres, by a formal deed, duly executed, to Hannah, instead of the 30 acres, is far from being clear. For, in truth, there was no occasion for such deed being executed, in order

[Plummer v. Neile.]

to effectuate the intention of the testator in regard to the 30 acres; because, without its being required and done, Nathaniel, the son, could not have claimed and taken the residue of the land, under the will, without relinquishing all his interest in the 30 acres to Hannah. He would not have been permitted to claim a benefit under the will without yielding to the wishes and intention of the testator, as manifested throughout the whole of it. He would have had a right to elect to take the estate devised to him in the will, or not, as he pleased; but if he elected to take it, he thereby, *ipso facto*, would have released all his right in and to the 30 acres, as completely as if he had executed the most formal deed that could have been devised and drawn for that purpose. That the law is so in this respect, was probably unknown to the testator when he made his will, and he therefore may have required his son to convey to Hannah his interest in the 30 acres; but it may be that he acquired a knowledge afterwards, before he made his codicil, that the execution of such a deed was unnecessary, and therefore deemed it unnecessary to repeat that it should be executed in regard to the 10 acres. Be this, however, as it may, we are entirely satisfied that, under the circumstances of this case, the plaintiffs have no right to the land in controversy. For, immediately upon the death of the testator, Nathaniel, the son, made his election to take the residue of the testator's land devised to him in the will, giving up and setting apart, at the same time, the whole entire 10 acres in severalty, as devised to Hannah. Hannah accordingly took possession of the 10 acres in severalty, which she has enjoyed ever since, a period of more than 21 years anterior to the commencement of this action; and Nathaniel, the son, in like manner took possession of the residue of the land, which he and those claiming under him have had and held ever since. It is plain that the only possible motive which the testator could have had for requiring his son to make a conveyance to his daughter Hannah, was, to make her secure in the right to enjoy the land in severalty devised by him to her. That she is as fully and completely invested with such right, as if a deed of conveyance for that purpose had been executed to her by her brother Nathaniel, is equally plain, and cannot now be doubted. That the testator intended his daughter Hannah should have the 10 acres beside what he had previously conveyed to her, is also perfectly certain and clear; but it is equally so, that he also intended that his son Nathaniel should have the residue of his land, and, indeed, that he should have it at all events; for in no event that might or should happen, has he given it over to any other. It is also clear that the objects, and in fact the only objects of his bounty, as to his land, have each obtained and gotten all that he intended or desired they should have, and that there is not the least shadow of ground for any one to complain against the other; and that it would be most inequitable and unjust to permit Hannah, the daughter, who

[Plummer v. Neile.]

is one of the plaintiffs, to hold the land conveyed and willed to her by her father, which, in reality, did belong in part to Nathaniel, the son, and to come in now and take from Nathaniel, or those claiming under him, that which the father gave him, and may very properly be considered as having been given by the father, for the purpose, among other considerations, of indemnifying Nathaniel for what he had given of his to Hannah.   Besides, if a deed of conveyance from Nathaniel, the son, to Hannah, the daughter, were requisite in order to protect the defendants who stand in the shoes of Nathaniel, it would be presumed to have been made, as the learned Judge in the court below instructed the jury, after the parties severally had each taken possession, immediately upon the death of the testator, of their respective devises in conformity to the will, and continued to hold and enjoy the same, in the same manner as if a deed of conveyance had actually been made, for a period of 21 years and upwards.

Judgment affirmed.